In re Terry Kenneth VICKERY, officer, director, shareholder TKV Consulting, member Johnstown–Milliken LLC, member 820 Welch St. LLC, member 3040 Zuni LLC, member West 29th St. LLC, member 3051–3063 Zuni LLC, Debtor.

Richard K. Diamond, as Chapter 7 Trustee for IVDS Interactive Acquisition Partners, a Florida General Partnership, Plaintiff–Appellee–Cross–Appellant,

v.

Terry Kenneth Vickery, officer, director, shareholder TKV Consulting, member Johnstown–Milliken LLC, member 820 Welch St. LLC, member 3040 Zuni LLC, member West 29th St. LLC, member 3051–3063 Zuni LLC, Defendant–Appellant–Cross–Appellee.

BAP No. CO–12–051.
Bankruptcy No. 10–41118.
Adversary No. 11–01164.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

March 13, 2013.

Steven W. Kelly, Esq. (Ruba M. Forno, Esq. with him on the brief) of Silver & DeBoskey, P.C., Denver, CO, for Plaintiff–Appellee–Cross–Appellant.

John G. Nelson, Esq. of the Law Office of John G. Nelson, Denver, CO, for Defendant–Appellant–Cross–Appellee.

Before KARLIN, SOMERS, and MOSIER[1], Bankruptcy Judges.

## OPINION

KARLIN, Bankruptcy Judge.

This appeal is from a bankruptcy court order entering judgment on nondischarge-ability claims under 11 U.S.C. § 523(a). Plaintiff/Appellant Richard Diamond, Chapter 7 Trustee for IVDS Interactive Acquisition Partners ("IIAP"), appeals from a portion of the bankruptcy court's order denying his claims that the debt owed by Defendant/Appellee Terry Vickery to IIAP should be excepted from discharge under § 523(a)(2)(A) and (a)(4). Prior to trial of this matter, the bankruptcy court held that, with respect to the nondischargeability claim predicated on "actual fraud," a plaintiff must establish a false representation for the debt to fall within § 523(a)(2)(A). Finding no evidence of a misrepresentation at trial, the bankruptcy court entered judgment for Mr. Vickery on the Trustee's § 523(a)(2)(A) claim. Regarding the Trustee's § 523(a)(4) claim, the bankruptcy court first concluded that the Trustee did not prove fiduciary fraud under that subsection, and then concluded that the Trustee had not amended his complaint to state a claim for embezzlement under § 523(a)(4).

Regarding the § 523(a)(2)(A) decision, we reverse the bankruptcy court's summary judgment decision that a plaintiff must establish a false representation to prevail on a claim for "actual fraud" under § 523(a)(2)(A). Giving full effect to the statute dictates that false pretenses, a false representation, *or* actual fraud can each be a basis for relief under that subsection. We therefore remand for the bankruptcy court to determine whether the Trustee can show that Mr. Vickery owes a debt to IIAP for money obtained by actual fraud. We affirm the bankruptcy court's decision regarding false representation under § 523(a)(2)(A). Subsection (c)(1) of that statute prohibits the assertion of claims on behalf of any party

---

1. Honorable R. Kimball Mosier, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Utah, sitting by designation.

other than "the creditor to whom such debt is owed," and the representations upon which the Trustee relied were to third parties.

We also affirm the bankruptcy court's § 523(a)(4) decision. The bankruptcy court did not abuse its discretion when it concluded that the Trustee's complaint had not been amended to include a claim for embezzlement.

## I. Background Facts and Procedural History

In the early 1990s, investment in interactive television systems became a potentially lucrative source of income, and by the mid–1990s certain bandwidths became eligible for licensing by the Federal Communications Commission ("FCC") for Interactive Video and Data Services ("IVDS"). IIAP was created in 1994 by Mr. Vickery and others for the purported purpose of purchasing IVDS licenses in large geographic areas, setting up IVDS systems, and profiting from the endeavor. Mr. Vickery did not have an ownership interest in IIAP, but was one of its promoters.[2] Mr. Vickery was, however, the president and sole stockholder of Digital Interactive Associates, Inc. ("DIA"), which was set up at approximately the same time. The purported purpose of DIA was to raise $6 million from potential IIAP investors to be used by IIAP to obtain IVDS licenses.

Mr. Vickery and his associates, through DIA, sought out hundreds of individuals to invest in the concept of IVDS by purchasing partnership interests in IIAP. The IIAP partnership agreement, which governed once the potential investor became a partner in IIAP, required the affirmative vote of at least 51% of the capital contributors for IIAP to act. Once an IIAP management committee was formed, it was expressly forbidden from "[doing] any act which would make it impossible to carry on the ordinary business of the Partnership." [3] Although the IIAP partnership agreement stated that IIAP "should have sufficient funds to obtain a license," [4] the arrangement between IIAP and DIA, which was undisclosed to potential investors, limited DIA to raising a total of $6 million in investments.[5] The $6 million would then be split 60% to DIA and only 40% to IIAP. DIA successfully raised $6 million for IIAP, and each investor became a general partner in IIAP.

IIAP successfully obtained three IVDS licenses from an FCC auction, at a cost of $6 million. IIAP made a $1.2 million down payment, and agreed to pay the remaining $4.8 million over 5 years. In addition to its obligation to pay the balance of the purchase price, IIAP was required to accomplish a 10% equipment build-out within the first year after purchase of the licenses. Thereafter, however, approximately $3.6 million of the investment money was transferred to DIA,[6] leaving IIAP without

---

2. Mr. Vickery was not a member or investor of IIAP, and only one of Mr. Vickery's associates—Mr. Carlo Anneke—was a partner, although Mr. Anneke only held a 0.1% partnership interest. *See* Cross–Appellant's Appendix ("App' x") at 2483–2505 (IIAP partnership agreement).

3. Agreement of General Partnership at ¶ 7.2, *in* App'x at 2491.

4. Agreement of General Partnership at ¶ 12.7, *in* App'x at 2497.

5. The $6 million figure was the maximum a company could raise and still be entitled to special credits in the license bidding process with the FCC.

6. The evidence regarding who within IIAP authorized this payment, and whether that person(s) or entity had authority to do so, is not clear. This is another reason we opt to remand this case: if the Trustee intends to assert a claim that Mr. Vickery actually defrauded IIAP, the Trustee would need to dem-

sufficient assets to pay for the licenses it had purchased, let alone construct a system to support them. Regardless, even the entire $6 million would have been insufficient to accomplish IIAP's purported goals.

As a result, IIAP filed a Chapter 11 bankruptcy petition in December 1995. The bankruptcy was subsequently converted to Chapter 7. Plaintiff/Appellant herein, who was appointed as the trustee of IIAP's estate (hereinafter, the "Trustee"), filed an adversary proceeding in the IIAP bankruptcy against Mr. Vickery and other "co-conspirators," alleging that the $3.6 million transferred to them through DIA was avoidable as a fraudulent transfer. Ultimately, the Trustee's claims were tried to a jury in a California federal district court, which returned a judgment in 2007 for the entire $3.6 million jointly against each defendant named in the Trustee's complaint, plus punitive damages of $1,000,000 against Mr. Vickery.

In December 2010, Mr. Vickery filed a petition for Chapter 7 relief in Colorado.[7] The Trustee timely filed an adversary proceeding against Mr. Vickery, seeking to have the IIAP judgment deemed nondis-chargeable pursuant to § 523(a)(2)(A), (a)(4), and (a)(6). Following a 3–day trial, the bankruptcy court ruled in favor of the Trustee on his § 523(a)(6) claim, but in favor of Mr. Vickery on the § 523(a)(2) and (a)(4) claims.

## II. Jurisdiction and Standard of Review

■ The bankruptcy court judgment from which both parties have appealed was entered on June 5, 2012. That judgment fully resolved all of the claims in the adversary proceeding, and is therefore a final, appealable order.[8]

Mr. Vickery timely filed a notice of appeal from the bankruptcy court judgment on the § 523(a)(6) claim on June 19, 2012, and on July 3, 2012, the Trustee timely filed a cross-appeal of the denial of his § 523(a)(2)(A) and (a)(4) claims.[9] Section 158(c)(1) of title 28 provides that all bankruptcy appeals "shall be heard" by an existing bankruptcy appellate panel ("BAP"), unless: 1) the appellant "at the time of filing the appeal," or 2) any other party within 30 days of the filing of the notice of appeal, elects to have the appeal heard by

---

onstrate that IIAP was not a participant of the fraud, so as not to be barred by the *in pari delicto* defense. *See, e.g., Mosier v. Callister, Nebeker & McCullough,* 546 F.3d 1271, 1276 (10th Cir.2008) (holding that *"in pari delicto* may bar an action by a bankruptcy trustee against third parties who participated in or facilitated wrongful conduct of the debtor").

7. Prior to Mr. Vickery's bankruptcy filing, the Trustee domesticated the California judgment in Colorado, and attempted to collect it by attaching assets placed by Mr. Vickery and his wife into a Colorado trust. The trust, by Mr. Vickery's wife, responded to the Trustee's garnishment by denying that it held any assets owned by Mr. Vickery. Ultimately, the matter was tried before the Colorado state court, which determined that all of the assets held by the trust must be turned over to the Trustee, and that the Vickerys' trust was a fraudu-lent effort to shield assets from creditors. The decision by the Colorado state court was upheld on appeal. *Diamond v. Vickery,* No. 10CA2557, 2012 WL 4009804 (Colo.Ct.App. Sept. 13, 2012). Although informative of the procedural and factual history of the parties' lengthy litigation, the Colorado state court litigation is not relevant to the issues in this appeal.

8. *In re Durability, Inc.,* 893 F.2d 264, 266 (10th Cir.1990) (concluding that a bankruptcy court order resolving an adversary proceeding is a final order).

9. Federal Rule of Bankruptcy Procedure 8002(a) requires a cross-appeal to be filed within 14 days of the filing of a timely notice of appeal. As such, the Trustee's cross-appeal was timely.

the district court. Bankruptcy Rule 8001(e) provides that such an election must be in a "separate writing." The Trustee filed a separate "Statement of Election" in Mr. Vickery's appeal on July 19, 2012, electing to have Mr. Vickery's appeal heard by the district court. That election, having been filed within 30 days of Mr. Vickery's notice of appeal, was timely as to that appeal.

On the same day, the Trustee sought to have his own appeal heard by the district court by filing the same "Statement of Election," previously filed in Mr. Vickery's appeal, along with a motion for leave to elect. The Trustee's election in his own appeal was defective for two reasons: 1) it was not filed "at the time of the filing of his own appeal (as required by § 158(c)(1)); and 2) it referred only to the "Debtor's appeal," which is not the appeal he was seeking to have transferred. As a result, the Trustee's request to have his appeal heard by the district court was denied and, therefore, the appeals in the district court [10] and the BAP are proceeding concurrently.

■■■ The interpretation of a statute and its requirements is a legal issue that is reviewed de novo.[11] To the extent the Trustee's appeal involves the sufficiency of the evidence at the bankruptcy court, it is reviewed under a clear error standard.[12] In applying that standard, an appellate court must defer to the trial court's findings unless they are "without factual sup-

port in the record, or, after examining all the evidence, we are left with a definite and firm conviction that a mistake has been made." [13]

■■■ A trial court's ruling regarding trial by consent under Federal Rule of Civil Procedure 15(b)(2) is reviewed for abuse of discretion.[14] "Under the abuse of discretion standard: a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." [15]

## III. Discussion

### A. Actual Fraud as a Separately Recognized Provision within § 523(a)(2)(A).

■■■ The Trustee appeals from the bankruptcy court's entry of judgment for Mr. Vickery under § 523(a)(2)(A). That section states:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

. . .

(2) for money, property, services, or . . . credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud[.]

Section 523(a) exceptions to discharge must be "narrowly construed, and because of the fresh start objectives of bankruptcy,

10. Case No. 12–cv–01891.

11. *Woody v. U.S. Dep't of Justice (In re Woody)*, 494 F.3d 939, 947 (10th Cir.2007) (noting that the review of a bankruptcy court's interpretation of the meaning of a statute's terms is de novo).

12. *DSC Nat'l Props., LLC v. Johnson (In re Johnson)*, 477 B.R. 156, 168 (10th Cir. BAP 2012).

13. *Id.* (internal quotation marks omitted).

14. *Kurzet v. Comm'r*, 222 F.3d 830, 843 (10th Cir.2000) (noting that the trial court's finding regarding trial by consent is reviewed for abuse of discretion).

15. *Lang v. Lang (In re Lang)*, 293 B.R. 501, 507 (10th Cir. BAP 2003) (internal quotation marks omitted).

doubt is to be resolved in the debtor's favor.[16] The creditor bears the burden of proving nondischargeability under § 523(a) by a preponderance of the evidence.[17]

■■■ The bankruptcy court addressed the scope of § 523(a)(2)(A) in a pretrial decision that denied the Trustee's motion for reconsideration and renewed motion for summary judgment. In that order, the bankruptcy court concluded:

> The Court understands that [the Trustee] is arguing that his section 523(a)(2)(A) claim is predicated on an "actual fraud" that does not require proof of misrepresentation or reliance, relying on the Seventh Circuit Court of Appeals' decision in *McClellan v. Cantrell,* 217 F.3d 890 (7th Cir.2000), to support this position.
>
> [T]he Seventh Circuit has ruled that there is a distinction between concepts of "false representation" and "actual fraud," and held that a debt for money obtained by "any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another" will be found to be nondischargeable as a debt obtained by "actual fraud" under section 523(a)(2)(A). *McClellan,* 217 F.3d at 893. In *Field v. Mans,* however, the Supreme Court directed courts to "look to the concept of 'actual fraud' as it was understood in 1978" and reflected in the Restatement (Second) of Torts (1976) when evaluating the dischargeability of a debt under section 523(a)(2)(A). 516 U.S. at 70, 116

S.Ct. 437. Unlike the *McClellan* Court, the Restatement does not draw the distinctions advocated by Diamond, for it "does *not* define 'fraud', much less 'actual fraud'; instead, it discusses 'fraudulent misrepresentation.'" *In re Mercer,* 246 F.3d 391, 403 (5th Cir.2001). The Tenth Circuit also has not drawn clear distinctions between "false representation," "false pretenses," and "actual fraud" in articulating the standard for nondischargeability under 11 U.S.C. § 523(a)(2)(A). *See Riebesell,* 586 F.3d at 789 (stating elements that must be proved in order to "establish a nondischargeable claim under section 523(a)(2)(A)); *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir. 1996)(same).[18]

The principal Tenth Circuit case relied upon by the bankruptcy court in its rejection of the "actual fraud" claim under § 523(a)(2)(A) is *Fowler Bros. v. Young (In re Young).*[19] In *Young,* the Tenth Circuit discussed § 523(a)(2)(A) claims as follows:

> [T]o establish a claim is nondischargeable under this subsection, the creditor must prove the following elements by a preponderance of the evidence: The debtor made a false representation; the debtor made the representation with the intent to deceive the creditor; the creditor relied on the representation; the creditor's reliance was reasonable; and the debtor's representation caused the creditor to sustain a loss.[20]

---

**16.** *Okla. Dep't of Secs. ex rel. Faught v. Wilcox,* 691 F.3d 1171, 1174 (10th Cir.2012) (internal quotation marks omitted).

**17.** *Grogan v. Garner,* 498 U.S. 279, 290–91, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

**18.** Order Denying Plaintiff's Motion for Reconsideration and Denying Renewed Motion for Summary Judgment at 5 n. 2, *in* App'x at 1855.

**19.** 91 F.3d 1367 (10th Cir.1996).

**20.** *Young,* 91 F.3d at 1373 (citation omitted). The reliance required under § 523(a)(2)(A) was addressed by the Supreme Court in *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); it held that reliance need only be justifiable.

Because of the bankruptcy court's pretrial ruling, the Trustee "endeavored to fit the evidence he presented at trial into the *Young* elements." [21]

■ "A court, when interpreting a statute, must first examine the statutory language." [22] The plain language of the discharge exception differentiates among three types of claims: "false pretenses, a false representation, *or* actual fraud." [23] The use of "or" in the statute must have meaning, and we are mindful that we must give effect to the plain meaning of the words used in the Bankruptcy Code when they are clear and unambiguous. [24] Actual fraud, therefore, must be something more, or at least different than, "false pretenses" or "false representations."

The bankruptcy court is correct, however, that the Tenth Circuit has not drawn distinctions among these phrases. In *Young*, the seminal § 523(a)(2)(A) case in the Tenth Circuit, the debtor/defendant was a lawyer who entered into a business relationship with his client, the plaintiff, resulting in a $16,892.82 promissory note that the plaintiff sought to have determined nondischargeable. [25] The Tenth Circuit concluded that Young made two "false representations" to the creditor/plaintiff: first, that he failed to inform the creditor/plaintiff of certain information that relevant rules of professional conduct required him to disclose, and second, that he failed to disclose potential conflicts of interest involved in their attorney-client exchange of services agreement that also were required to be disclosed. [26] Neither of the lower courts identified which subsection of § 523(a) was relied on as the basis for their conclusion that the plaintiff's claim was nondischargeable. [27] Of two possible statutory subsections suggested by the *Young* plaintiff, the Circuit concluded that only § 523(a)(2)(A) could potentially prevent the debt's discharge. [28]

The *Young* court considered whether or not the plaintiff had satisfied each element of a § 523(a)(2)(A) claim, which, as stated above, it pronounced to be: "[1] the debtor made a false representation; [2] the debtor made the representation with the intent to deceive the creditor; [3] the creditor relied on the representation; [4] the creditor's reliance was reasonable; and [5] the debtor's representation caused the creditor to sustain a loss." [29] With regard to the first of these elements, the Circuit concluded that the two "false representations" detailed above (the debtor's failure to make disclosures required of attorneys entering into business transactions with clients by the rules of professional conduct, and failure to disclose potential conflicts of interest that developed over time in the course of the parties' dealings) satisfied the first element of the claim. [30] The Circuit then summarily determined that the third and fourth ("reasonable" reliance)

**21.** Findings of Fact, Conclusions of Law, and Ruling at 6, *in* App'x at 3257.

**22.** *In re Parker*, 264 B.R. 685, 696–97 (10th Cir. BAP 2001), *aff'd*, 313 F.3d 1267 (10th Cir.2002).

**23.** § 523(a)(2)(A) (emphasis added).

**24.** *See In re George Rodman, Inc.*, 792 F.2d 125, 128 (10th Cir.1986) (noting that courts should use the plain meaning of the words used in the Bankruptcy Code unless an ambiguity exists).

**25.** 91 F.3d at 1370.

**26.** *Id.* at 1373.

**27.** *Id.* at 1370–71.

**28.** *Id.* at 1371–73.

**29.** *Id.* at 1373.

**30.** *Id.* at 1374–75.

and the fifth (loss) elements also had been satisfied.[31] The Circuit, however, remanded the case on the ground that the bankruptcy court had made no finding on the second element—whether the debtor's misrepresentations had been made with the intent to deceive the plaintiff.[32]

The conduct at issue in *Young* involved what the Tenth Circuit characterized as a false representation. The listing of elements, however, was not limited to a particular type of § 523(a)(2)(A) claim. As a result, other cases in the Tenth Circuit have loosely used the § 523(a)(2)(A) language or not distinguished amongst "false pretenses, a false representation, or actual fraud."[33]

Likewise, the Supreme Court in *Field v. Mans*[34] used the phrases almost interchangeably. The *Field v. Mans* case dealt factually with misrepresentations—specifically, the level of reliance necessary for a § 523(a)(2)(A) false representation nondischargeability claim.[35] Within its discussion, the Supreme Court stated that courts should "look to the concept of 'actual fraud' as it was understood in 1978 when that language was added to § 523(a)(2)(A)" in their efforts to define

the level of reliance required by the statute.[36] The Supreme Court thus looked to the Restatement (Second) of Torts (1976) in determining what the appropriate reliance standard for misrepresentation claims should be.[37] Because the referred-to Restatement does not define, or even discuss, "actual fraud," and does not draw a distinction between misrepresentation (*i.e.*, false representation) and actual fraud, some have argued that an actual fraud claim under § 523(a)(2)(A) was not sanctioned by the Supreme Court.

This argument gives too much emphasis to what the Restatement has to say, however, and not enough emphasis to the actual Supreme Court opinion. In *Field v. Mans*, the Supreme Court did not limit its inquiry to how the Restatement defined the law. Rather, the Supreme Court repeatedly emphasized that the established meaning of terms under the common law should be consulted when Congress uses "terms that have accumulated settled meaning."[38] While the Supreme Court relied heavily on the Restatement, it also consulted other treatises and ultimately concluded that the "common-law under-

**31.** *Id.* at 1375.

**32.** *Id.*

**33.** *See, e.g., Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 789 (10th Cir.2009) (citing *Young* factors for any nondischargeability claim under § 523(a)(2)(A) but applying those factors to a false representation claim); *DSC Nat'l Properties, LLC v. Johnson (In re Johnson)*, 477 B.R. 156, 169 (10th Cir. BAP 2012) (discussing fraud but applying *Young* misrepresentation factors). *But see John Deere Co. v. Gerlach (In re Gerlach)*, 897 F.2d 1048, 1051, 1052 (10th Cir.1990) (stating that "[s]ection 523(a)(2), by its terms, only requires an objecting creditor to prove an extension of credit was 'obtained by' fraud for the debt to be excepted from discharge" and that "a debt is 'obtained by' fraud if the fraud is a substantial factor in the creditor's decision").

**34.** 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

**35.** *See id.* at 61, 116 S.Ct. 437 ("In this case, we consider the level of a creditor's reliance on a fraudulent misrepresentation necessary to place a debt thus beyond release. While the Court of Appeals followed a rule requiring reasonable reliance on the statement, we hold the standard to be the less demanding one of justifiable reliance and accordingly vacate and remand.").

**36.** *Id.* at 70, 116 S.Ct. 437.

**37.** *Id.*

**38.** *Id.* at 69, 116 S.Ct. 437 (internal quotation marks omitted).

standing" of the terms used in the Code controlled.[39] More importantly, the *Field v. Mans* decision refers throughout to "falsity *or* fraud" as sufficient under § 523(a)(2)(A).[40] Further, the entire focus of the decision was how to give meaning to the words Congress chose to use (in that case, to define the word "reliance"). It would be ironic to conclude that *Field v. Mans* stands for the position that the term "actual fraud" should be entirely read out of the statute, despite Congress's 1978 express addition thereto.[41]

The first appellate court to consider in depth the distinct meaning of actual fraud within § 523(a)(2)(A) was the Seventh Circuit Court of Appeals in *McClellan v. Cantrell*.[42] In *McClellan*, the circumstances more closely resemble the present case, in that the debtor in that case made no "representation" to the creditor at all. The creditor, McClellan, sold icemaking machinery for $200,000 to the debtor's brother, who agreed to pay for it in installments.[43] McClellan failed to perfect his security interest in the machinery, and the debtor's brother defaulted on the loan.[44] McClellan sued the brother in state court but, while that suit was pending, the brother "sold" the machinery to the debtor, his sister, for $10.[45] The debtor subsequently

resold her $10 machinery for $160,000, and refused to reveal what had happened to the proceeds.[46] McClellan joined the debtor as a defendant in his state court lawsuit, and two years later, while that suit was still pending, she filed a Chapter 7 petition.[47]

McClellan filed an adversary proceeding against her, alleging that, as the recipient of a fraudulent transfer from her brother, she owed McClellan the value of the machinery.[48] The bankruptcy court dismissed McClellan's complaint, concluding that *Field v. Mans* required proof of a material misrepresentation, as well as plaintiff's reliance on it, for a debt to be nondischargeable under § 523(a)(2)(A).[49]

The Seventh Circuit reversed on the ground that the only claims made in *Field v. Mans* had involved misrepresentations, stating, "[n]othing in the Supreme Court's opinion suggests that misrepresentation is the only type of fraud that can give rise to a debt that is not dischargeable under section 523(a)(2)(A). No other type of fraud was alleged in the case or discussed in the opinion."[50] The Seventh Circuit distinguished the allegations in its case, describing the claim as: "A transfers valuable property to B for nothing in order to keep it out of the hands of A's creditor and

---

**39.** *Id.* at 71–72, 116 S.Ct. 437 (citing, among others, W. Prosser, *Law of Torts* § 108 at 717 (4th ed. 1971) and F. Harper & F. James, *Law of Torts* § 7.12 at 581–83 (1956)).

**40.** *See, e.g., id.* at 64, 66, 116 S.Ct. 437 (emphasis added). The Supreme Court also recognized the differences among the terms when it stated in a footnote: "Although we do not mean to suggest that the requisite level of reliance would differ if there should be a case of false pretense or representation but not of fraud, there is no need to settle that here." *Id.* at 70 n. 8, 116 S.Ct. 437.

**41.** *Id.* at 64–65, 116 S.Ct. 437 (discussing modifications to the Bankruptcy Code in the Bankruptcy Reform Act of 1978).

**42.** 217 F.3d 890 (7th Cir.2000).

**43.** *Id.* at 892.

**44.** *Id.*

**45.** *Id.*

**46.** *Id.*

**47.** *Id.*

**48.** *Id.*

**49.** *Id.*

**50.** *Id.*

B then sells the property and declares bankruptcy in an effort to shield herself from liability for having colluded with A to defeat the rights of A's creditor."[51] The debtor's conduct in *McClellan* was deemed to be "as blatant an abuse of the Bankruptcy Code as we can imagine. It turns bankruptcy into an engine for fraud."[52]

The difference between "constructive" fraud (evidenced only by inadequacy of consideration) and "actual" fraud (involving fraudulent intent) was considered significant to the Seventh Circuit, which noted that only the latter falls within the § 523(a)(2)(A) exception:

> To transfer property for less than adequate consideration may be desperate, foolish, or imprudent, and the receipt of such a transfer a pure windfall, but neither the transfer nor the receipt is in and of itself dishonest, and so neither is an appropriate ground for refusing to allow the debtor to discharge the debt arising from the transfer and thus to get on with his life without the debt hanging over his head. The situation is entirely different, and the debtor's equities and argument for discharge much weaker, when the debtor is guilty of intent to defraud. The purpose of section 523(a)(2)(A) in confining nondischargeability to actual fraud is merely to recognize this difference and thus to exclude constructive fraud. This purpose is unrelated to whether the intent to defraud was implemented by a misrepresentation or by some other improper means.[53]

The debtor's fraud in *McClellan* was "actual" because she had engaged in a scheme with her brother that was intended to prevent the plaintiff from recovering his debt.[54] The *McClellan* court also concluded that the plaintiff did not need to establish his reliance on either the debtor or her brother, because "reliance is relevant only when a fraud takes the form of a misrepresentation."[55]

Following the Seventh Circuit's lead, the Sixth Circuit BAP likewise held that § 523(a)(2)(A) fraud claims need not include misrepresentations in *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich).*[56] The *Vitanovich* court held that a "classic check kiting scheme" was nondischargeable as "actual fraud," regardless whether presentation of checks constituted a "representation."[57] In reaching this conclusion, the BAP "adopted" the Seventh Circuit's position that "actual fraud" under § 523(a)(2)(A) "is not limited to representations and misleading omissions," stating further that "[w]hen a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right, that debtor has engaged in actual fraud and is not entitled to the fresh start provided by the Bankruptcy Code."[58] As had the *McClellan* court, the *Vitanovich* court concluded that previous fraud cases that involved only "false representation, misrepresentations and/or omissions" are not particularly relevant to "actual fraud," which is "broader than misrepresentation."[59]

---

51. *Id.* at 893.

52. *Id.*

53. *Id.* at 894 (citations and emphasis omitted).

54. *Id.*

55. *Id.*

56. 259 B.R. 873 (6th Cir. BAP 2001).

57. *Id.* at 877.

58. *Id.*

59. *Id.*

■ We agree with the reasoning of the *McClellan* and *Vitanovich* courts. In order to give full effect to the plain meaning of the disjunctive "or" in § 523(a)(2)(A), we conclude that "actual fraud" is an independent basis for nondischargeability under that subsection.[60] As a result, we reverse the bankruptcy court's pretrial legal conclusion in this regard. The *McClellan* court's reasoning is persuasive, and we adopt its position that "actual fraud" under § 523(a)(2)(A) is not limited to misrepresentations or misleading omissions. As in *McClellan*, we are careful to clarify that only "actual fraud" is covered by § 523(a)(2)(A), not constructive, or implied fraud.[61] As this Court has previously stated, "[t]he term 'fraud' as used in § 523(a)(2)(A) means actual or positive fraud rather than fraud implied by law."[62]

Accordingly, the Trustee may prevail under § 523(a)(2)(A) if he shows that the debt Mr. Vickery owes to IIAP is for money obtained by actual fraud. It is the creditor's (*i.e.*, the Trustee's, standing in the shoes of IIAP) duty to show that those damages (*i.e.*, the debt owed by Mr. Vickery to IIAP) were incurred by actual fraud. Because the bankruptcy court held before trial that proof of actual fraud was not a sufficient showing under § 523(a)(2)(A), and that a misrepresentation had to be shown, it did not have an opportunity to determine whether the Trustee could carry his burden. Thus, the bankruptcy court erred in denying the Trustee an opportunity to prove actual fraud through Mr. Vickery's transfer of assets from IIAP to DIA.

■ To give the Trustee an opportunity to prove actual fraud, we remand the § 523(a)(2)(A) claim to the bankruptcy court to apply the correct definition of actual fraud to the facts of this case.[63] On remand, the Trustee must prove by a preponderance of the evidence that the debt Mr. Vickery owes IIAP was for money obtained by actual fraud.[64] Moreover, be-

---

**60.** *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979) ("In construing a statute we are obliged to give effect, if possible, to every word Congress used Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise.") (citation omitted).

**61.** *See McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir.2000) (focusing on intent to defraud).

**62.** *In re Parker*, 264 B.R. 685, 699 (10th Cir. BAP 2001), *aff'd*, 313 F.3d 1267 (10th Cir. 2002); *see also Driggs v. Black (In re Black)*, 787 F.2d 503, 505 (10th Cir.1986) (stating that § 523(a)(2)(A) "includes only those frauds involving moral turpitude or intentional wrong, and does not extend to fraud implied in law which may arise in the absence of bad faith or immorality;" separate statement of standard of proof for the dischargeability exceptions in § 523(a) abrogated by *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)); *DSC Nat'l Properties, LLC v. Johnson (In re Johnson)*, 477 B.R. 156, 169 (10th Cir. BAP 2012) (narrowly constru-

ing the scope of § 523(a)(2)(A) to apply only "to frauds involving moral turpitude or intentional wrong" and stating that "[f]raud implied in law which may arise in the absence of bad faith or immorality is not sufficient" but that "[t]he debtor must have acted with the *subjective intent* to deceive the creditor") (internal quotation marks omitted).

**63.** Upon remand to the bankruptcy court, we note also that we have previously stated that the "state law of fraud controls with respect to whether fraud has occurred, while bankruptcy law controls with respect to the determination of nondischargeability." *Lang v. Lang (In re Lang)*, 293 B.R. 501, 513 (10th Cir. BAP 2003).

**64.** As the bankruptcy court noted in its pretrial order denying the Trustee's motion for summary judgment, the jury's verdict in the California federal district court was that the transfer of money was done "with the actual intent to hinder, delay, *or* defraud." Order Denying Plaintiff's Motion for Summary Judgment at 10, *in* App'x at 1590. Therefore, the Trustee must still show that Mr. Vickery "act-

cause § 523(a)(2)(A) requires *actual* fraud, and not merely constructive fraud, the Trustee must prove the amount of his damages attributable to *actual* fraud. The bankruptcy court is tasked, therefore, with not only determining whether the debt is for money obtained by actual fraud, but if so, what is the correct measure of damages.[65]

## B. The Trial Evidence of Misrepresentation was Insufficient to Support Nondischargeability for "False Representation" Under § 523(a)(2)(A).

■ The Trustee next argues on appeal that the bankruptcy court erred by refusing to consider false representations to investors as a basis for nondischargeability of the IIAP judgment under § 523(a)(2)(A). The Trustee generally argues that the evidence at trial showed that the investors in IIAP, who became its partners, were misled as to the nature of the financing arrangement and transfer of monies between IIAP and DIA, and that, therefore, the debt Mr. Vickery owes IIAP resulted from money obtained by these misrepresentations.

Section 523(c)(1) addresses who has statutory authority to bring a § 523(a) nondischargeability claim. Under that subsection, only the creditor to whom the debt is owed can bring a nondischargeability claim under (a)(2)(A):

> [T]he debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

Here, the creditor is IIAP, the judgment debt is owed by Mr. Vickery to IIAP, and the Trustee is standing in IIAP's shoes as the plaintiff pursuing nondischargeability. The Trustee, therefore, has the burden to show the nondischargeability of the debt owed to IIAP.

Although the investors in IIAP may have had a claim against Mr. Vickery for misrepresenting the nature of their investment, they are neither the plaintiff nor the creditors of Mr. Vickery in this case. Only IIAP is a creditor of Mr. Vickery, yet the only misrepresentations asserted by the Trustee at trial were from Mr. Vickery and his co-conspirators to the investors.[66]

---

ed with the *subjective intent* to deceive the creditor." *In re Johnson*, 477 B.R. at 169.

**65.** Admittedly, nondischargeable debt under § 523(a)(2)(A) is not limited to the actual value a debtor obtains through fraud, but includes also punitive and compensatory damages. *See Tanner v. Barber (In re Barber)*, 326 B.R. 463, 467 (10th Cir. BAP 2005) ("As a matter of law, nondischargeable debt under § 523(a)(2)(A) is not limited to the actual value a debtor obtains through fraud, but includes punitive and compensatory damages. Therefore, when the bankruptcy court found that the debt was nondischargeable under § 523(a)(2)(A), it found that liability for all damages flowing from the fraud was nondischargeable.") (citation omitted).

**66.** We use the phrase "misrepresentation" as defined by the factors set out by the Tenth Circuit in *Young* and discussed above. We do not mean to imply, however, that the Trustee could not show actual fraud to IIAP under § 523(a)(2)(A), or that he did not show willful and malicious injury from Mr. Vickery's intent to injure IIAP under § 523(a)(6). Whether the Trustee properly proved his claim under § 523(a)(6) will be decided in the related appeal pending in the United States District Court for the District of Colorado in Case No. 12-cv-01891.

In addition, although the Trustee argues on appeal that he presented evidence to the bankruptcy court that supported a claim of false representations made to IIAP, the evidence and argument actually presented to the

A false representation simply cannot be shown on those facts because § 523(c)(1) dictates that the only party with standing to bring a § 523(a)(2)(A) claim is "the creditor to whom such debt is owed." The only debt the Trustee pleaded is the judgment against Mr. Vickery in favor of IIAP, and that debt arose from Mr. Vickery's role in obtaining money from IIAP, not from the investors. Because the debt is owed from Mr. Vickery to IIAP, the bankruptcy court correctly concluded that Plaintiff could not state a § 523(a)(2)(A) claim based on misrepresentations made by Mr. Vickery to investors.

### C. Trial by Consent of the § 523(a)(4) Claim.

The Trustee also appeals from the bankruptcy court's entry of judgment for Mr. Vickery on the Trustee's § 523(a)(4) claim. Section 523(a)(4) states:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
> . . .
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

The Trustee's adversary complaint alleged a § 523(a)(4) claim on the ground that Mr. Vickery "acted as a fiduciary" for IIAP and, "[w]hile acting in a fiduciary capacity," he "committed fraud and defalcation." [67] In his later memorandum in support of summary judgment, however, the Trustee changed his argument, claiming

that the judgment against Mr. Vickery established facts that "meet the definition of embezzlement." [68] Although the Trustee set forth the elements that must be proved to establish embezzlement, he provided very little argument regarding his embezzlement "claim" in his memorandum.

The bankruptcy court's order denying the Trustee's motion for summary judgment notes that the only § 523(a)(4) claim asserted in connection with the summary judgment motion was "based on embezzlement," and that the Trustee did not contend "the facts support a claim for nondischargeability for fraud or defalcation while acting in a fiduciary capacity or for larceny." [69] The bankruptcy court then found that the facts that were proven in the California trial that led to IIAP's judgment against Mr. Vickery were insufficient to satisfy all of the elements of embezzlement. Therefore, the Trustee was not entitled to judgment as a matter of law based on the preclusive effect of the judgment on the embezzlement claim. For these reasons, the § 523(a)(4) claim proceeded to trial.

In its findings and conclusions after trial, the bankruptcy court noted that the § 523(a)(4) claim set forth in the Trustee's complaint was based solely on "fiduciary fraud," but that the evidence at trial did not support such a claim because it did not establish that the $3.6 million transferred to DIA from IIAP, which formed the basis of the debt to IIAP, had been entrusted to Mr. Vickery pursuant to an express or statutory trust. [70] The bankruptcy court

---

bankruptcy court was that misrepresentations by Mr. Vickery to the investors should be found to be equivalent to misrepresentations to IIAP. This is an important distinction: the California district court judgment concluded that it was IIAP who suffered harm and who is owed money, not the investors.

**67.** Complaint at ¶¶ 53–56, *in* App'x at 16.

**68.** Plaintiff's Memorandum in Support of Motion for Summary Judgment at 27, *in* App'x at 132.

**69.** Order Denying Plaintiff's Motion for Summary Judgment at 12, *in* App'x at 1592.

**70.** Findings of Fact, Conclusions of Law, and Ruling at 6–7, *in* App'x at 3247–48. The

noted that, although the Trustee asserted at final argument "that he pled a claim under the embezzlement prong of § 523(a)(4) in his Complaint," that assertion was inaccurate.[71] The bankruptcy court held that the Trustee's allusion to embezzlement in his summary judgment motion did not give fair warning to Mr. Vickery that he must defend such a claim at trial, particularly since the Trustee had never moved to conform the pleadings to the evidence.

 Federal Rule of Civil Procedure 15(b), applicable to bankruptcy via Federal Rule of Bankruptcy Procedure 7015, governs amendments to pleadings. Rule 15(b)(2) states:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

A complaint is impliedly amended under Rule 15(b) "if an issue has been tried with the express or implied consent of the parties and not over objection."[72] Implied consent is found when a party either introduces evidence on the new issue or fails to object when the opposing party introduces such evidence.[73] Whether to conform pleadings to evidence is a matter left to the trial court's "broad discretion."[74]

 On appeal, the Trustee claims that the embezzlement issue was "raised and argued," as well as "fully briefed" in connection with summary judgment and that, therefore, the embezzlement claim was tried by consent. Contrary to the Trustee's argument, however, the record indicates that Mr. Vickery did not impliedly consent to trial of the embezzlement claim. The complaint, controlling in this matter because there was no pretrial order,[75] discusses only fraud and defalcation while acting in a fiduciary capacity, and the word "embezzlement" never appears.[76] In addition, the Trustee's opening statement at trial only generally mentioned § 523(a)(4), without any mention of embezzlement.[77] Mr. Vickery's counsel followed suit in his opening statement, limiting his § 523(a)(4) comments to "breach of fiduciary responsibility against the partnership."[78] In addition, aside from an extremely brief reference to the record (citing only one general question about whether "anyone at IIAP ever complain[ed] about the use of

Trustee did not appeal this portion of the bankruptcy court's ruling.

**71.** *Id.* at 7, *in* App'x at 3248.

**72.** *Hardin v. Manitowoc–Forsythe Corp.,* 691 F.2d 449, 456 (10th Cir.1982).

**73.** *Green Country Food Mkt., Inc. v. Bottling Group, LLC,* 371 F.3d 1275, 1280 (10th Cir. 2004).

**74.** *Id.* at 1281 (concluding that the trial court did not abuse its discretion in refusing to treat a complaint that asserted claims under subsections (B) and (C) of § 203 of the Oklahoma Antitrust Reform Act as having asserted a claim under subsection (A) of the same stat-

ute, where that subsection had only been referenced three times in motions).

**75.** *See Minter v. Prime Equip. Co.,* 451 F.3d 1196, 1204 (10th Cir.2006) (stating that if there is a pretrial order, then it "is the controlling document for trial").

**76.** Complaint at ¶¶ 52–56, *in* App'x at 16.

**77.** Transcript of March 19, 2012 at 84–91, *in* App'x at 1954–61.

**78.** *See id.* at 92, *ll.* 19–20, *in* App'x at 1962 (opening statement from Mr. Vickery's counsel summarizing the claims made by the Trustee against Mr. Vickery).

funds"),[79] the Trustee made no effort on appeal to establish that the trial record supports his contention that the embezzlement issue was tried by consent.

A trial court is in a far better position to determine the element of "surprise" than is an appellate court. Here, the bankruptcy court expressly found that the Trustee had not raised the embezzlement claim in such a way that Mr. Vickery was on notice that it was a claim he would need to defend. The Trustee has not shown in his appeal how that decision constitutes an abuse of discretion. We affirm the bankruptcy court's judgment for Mr. Vickery on the Trustee's claim for nondischargeability under § 523(a)(4).

### IV. Conclusion

Because we conclude that actual fraud is an independent basis for nondischargeability under § 523(a)(2)(A), we reverse the bankruptcy court's pretrial decision on that basis, and remand that claim to the bankruptcy court to determine whether the Trustee can prove that Mr. Vickery's debt to IIAP is for money obtained by actual fraud. We affirm the decision of the bankruptcy court regarding the Trustee's § 523(a)(2)(A) claim based on false representation, because subsection (c)(1) of that statute prohibits the Trustee from asserting claims on behalf of any party other than "the creditor to whom such debt is owed." We also affirm the judgment in favor of Mr. Vickery on the Trustee's § 523(a)(4) claim, because the bankruptcy court did not abuse its discretion when it concluded that the Trustee's complaint had not been amended to include a claim for embezzlement.

---

79. *Id.* at 118, *ll.* 10–11, *in* App'x at 2404.