### No. 27158

**Donald More and Pauline More v. Lloyd Johnson; Virginia Johnson; Roy L. Wright, d/b/a Wright Engineering; Alma C. Jabas, a/k/a Alma Cowgill Jabas; Gertrude M. Alexander; Donald M. Alexander; John G. Stuart; Ann M. Stuart; Carl S. Mundinger; Georgia A. Mundinger; and all unknown persons who claim any estate title, lien, right or interest in the subject matter of this action**

(568 P.2d 437)

Decided August 22, 1977. Opinion modified and as modified rehearing denied September 19, 1977.

Tague, Goss, Schilken & Beem, P.C., Clifford L. Beem, for plaintiffs-appellees.

Fairfield and Woods, Peter F. Breitenstein, Patrick F. Kenney; Feldhamer, Plotz & Eskwith, P.C., Carl Feldhamer, for defendants-appellants.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

The Mores filed suit to quiet title to certain real estate and to obtain damages for trespass and conspiracy to commit trespass. The original complaints which were consolidated for trial included claims for trespass, conspiracy, nuisance, adverse possession, forcible entry and detainer, negligence, and for reformation of the Mores' deed. A number of defendants, other than those which are before us on this appeal, were named in the original complaints. Prior to trial, a preliminary injunction granted the Mores the right to remove a fence which had been erected by the Johnsons somewhere in the vicinity of the disputed boundary line. Motions for summary judgment filed by both parties were denied.

Factual issues, including damages for trespass and conspiracy, were submitted to the jury for determination. After trial, a special verdict was returned finding that it was the intention of the Mores' predecessors in interest to convey to the Mores all of the property to the center line of Chalk Creek. Based upon the special findings, the trial court directed a judgment against the Johnsons for trespass and instructed the jury on the issues of damages and conspiracy. The jury returned a verdict for the Mores and against Johnson and Wright for $15,000 for conspiracy to trespass by erecting or maintaining a fence. All claims apart from the conspiracy and trespass were withdrawn. Title was quieted in the Mores, and $5,000 was awarded to the Mores for attorneys' fees under Colorado's Forcible Entry and Detainer Statute. Section 13-40-123, C.R.S. 1973. Johnson and Wright, the only defendants before us, have appealed. We reverse and remand for a new trial.

On appeal, the following issues were raised: (1) Whether the trial court properly construed the Mores' deed. (2) Whether sufficient evidence was introduced to justify submission of the civil conspiracy charge to the jury. (3) Whether the damages awarded were excessive. (4) Whether an award of attorneys' fees to the plaintiff under the Forcible Entry and Detainer Statute violates the defendants' constitutional right to equal protection of the law.

## I.

Both the Mores and the Johnsons hold title from a common grantor in their respective chains of title. In 1927, the parcels now owned individually were held as a single tract by the Mt. Princeton Hotel Company. On January 19, 1927, the Hotel Company delivered a deed of trust to the public trustee encumbering its entire interest. In 1928, the Hotel Company, on three different occasions, executed deeds to parts of its land to Nellie Porter Cowgill. Plaintiffs' title is derived from Cowgill. Defendants' predecessor in title obtained a sheriff's deed to all lands encumbered by the 1927 deed of trust at an execution sale, except the Cowgill land which had been released in 1929.

The primary issue is whether the Mores or the Johnsons hold title to the bed of Chalk Creek from its centerline to its northern bank between their respective properties. The record establishes that the Mores own the property north of Chalk Creek's northern bank and that the Johnsons own the property south of the centerline of Chalk Creek. The resolution of the issue of title to the north half of Chalk Creek depends upon the construction given the language in the deeds to Nellie Porter Cowgill. One of the Cowgill deeds contained the following legal description:

". . . . Tract of land between C & S track and Chalk Creek beginning at the SE corner near north bank of Chalk Creek; whence corner No. 3 of the Thiele tract an iron pipe on south bank of Chalk Creek bears S 36 26' E 95 ft; thence N 8 W 68 ft to south end of C & S ties; thence S 82 W 394 ft; thence S 8 E 254 ft to a point on the north bank of Chalk Creek near diversion dam of Noble ditch; thence down the creek 413 ft more or less to point of beginning. . . ."

It is this language which must be construed.

The general rule of law followed in Colorado is that a deed conveying land bordered by a non-navigable stream includes the bed to the center or thread of the stream if the stream is described as a boundary or monument. *City of Denver v. Pearce*, 13 Colo. 383, 22 P. 774 (1889); *Hanlon v. Hobson*, 24 Colo. 284, 51 P. 433 (1897). Whether the rule prevails in a given case is to be determined by a consideration of the language used and the surrounding circumstances which are proper and may be considered to ascertain the intention of the parties. *City of Denver v. Pearce, supra.*

The plaintiffs have focused on two phrases from the Cowgill deed to justify application of the rule in this case: (1) "Tract of land between C & S track and Chalk Creek," and (2) "thence down the creek 413 ft."

The first phrase is strikingly similar to the language found in the *Pearce* case. In that case, the grant in part read: "all that certain piece of land lying between the western line of lot numbered nine (9) and Cherry Creek. . . ." This court held the general rule to be that in such

descriptions the stream is the monument and the thread of the stream is the boundary. But even in that case, evidence of circumstances inconsistent with the general rule were held to be controlling.

Similarly, the second phrase can also be read to give rise to the general rule. In *Smith v. Town of Fowler*, 138 Colo. 359, 333 P.2d 1034 (1959), this court held that:
"[W]here the words 'along,' 'to,' or 'bounded by' a water course or similar expressions are used to describe a grant, the rule is generally held to apply, unless a contrary intention of the parties appears."

■ While both phrases standing alone are consistent with an intention to transfer the bed of the stream, they must be considered in terms of the entire grant. When so viewed, it becomes clear that the general rule does not apply in this case. The decisive language in the deed gives the following direction: "thence S 8 E 254 ft to a point on the north bank of Chalk Creek near diversion dam of Noble ditch." This grant is inconsistent with the intent presumed by the general rule.

The quoted language is significantly different than that which was in issue in *Hanlon v. Hobson, supra.* In *Hanlon*, the grants ran "thence south to the Arkansas River" and included land "lying on the south side of the river." In neither of those grants was the bank referred to as a monument or a boundary; on the contrary, in both the non-navigable stream itself was made a monument and the thread of the stream a boundary.

■ The phrase in the Mores' deed, read literally, granted property to the point on the north bank of the creek. The result was to make the point a monument and the bank a boundary. In the context of the entire deed, we regard the second phrase "thence down the creek" as being merely directional. Since the deed was unambiguous, the trial court erred in admitting parol evidence to supplement the instrument. *Radke v. Union Pacific RR. Co.*, 138 Colo. 189, 334 P.2d 1077 (1958).

## II.

■ Turning to the second issue, we point out that the record establishes that defendant Johnson committed a trespass by constructing a malicious spite fence north of the north bank of Chalk Creek, and, thus, on the More property. Plaintiffs alleged, and the jury found, a conspiracy existed between the Johnsons and Wright to commit the trespass. In *Lockwood Grader Corp. v. Bockhaus*, 129 Colo. 339, 270 P.2d 193 (1954), five elements were stated to be essential to such a claim:
"To constitute a civil conspiracy there must be: (1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. The burden of proving these essentials by a preponderance of the evidence is upon him who asserts the claim under such circumstances."

In a civil conspiracy action, the conspiracy is not actionable *per se.* Actual damages must be proved. *Morrison v. Goodspeed,* 100 Colo. 470, 68 P.2d 458 (1937).

Defendants contend that plaintiffs failed to present evidence that established a meeting of the minds or agreement to commit the trespass. Plaintiffs insist that the agreement to commit trespass is evidenced by knowledge on the part of Wright that Johnson would use or was using his survey to construct the illegal fence. Plaintiffs would, thus, imply an agreement and conspiracy from Wright's silence. But silent knowledge of an unlawful act is insufficient to establish the requisite agreement. Where an engineer is retained to prepare a survey and it is alleged that he conspired to commit a trespass, proof of an agreement must be presented; it will not be inferred. Lacking competent evidence on an essential element, it was reversible error to submit the conspiracy issue to the jury. *See Speer's Free Clinic & Hospital v. Denver Better Business Bureau,* 135 Colo. 464, 312 P.2d 110 (1957); *McGlasson v. Barger,* 163 Colo. 438, 431 P.2d 778 (1967).

Defendants also appeal the damage award of $15,000 as being excessive. Since that award was the product, and part and parcel, of the errors which require reversal, it is unnecessary to address the issue here.

### III.

Finally, defendants assert that an award of attorney's fees to a successful plaintiff under the Forcible Entry and Detainer Statute, with no reciprocal right for a successful defendant, denies such defendants the equal protection of law. The statute challenged is section 13-40-123, C.R.S. 1973, which, in part, reads as follows:

"*Plaintiff's damages.* If the plaintiff recovers in any action brought under the provisions of this article, he is entitled to recover damages, reasonable attorney's fees, and costs of suit, against the person found guilty, in a separate action or in supplemental proceedings in the same action for any damages or injury he sustained during the time he was deprived of the possession of the premises."

In *Davidson v. Jennings,* 27 Colo. 187, 60 P. 354 (1900), this court held a similar section of the Mechanic's Lien Act to be unconstitutional as being contrary to Article II, Section 6 of the Colorado Constitution, which provides:

"Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property, or character; and right and justice should be administered without sale, denial, or delay."

Another act of like import was found unconstitutional in *Pacific Life Insurance Co. v. Van Fleet,* 47 Colo. 401, 107 P. 1087 (1910). The United States Supreme Court has also held a Texas statute which awarded attorney's fees to the successful plaintiff to be violative of the Fourteenth Amendment guarantee of equal protection of the law. *Gulf,*

*Colorado & Santa Fe Ry. Co. v. Ellis*, 165 U.S. 150, 17 S.Ct. 255, 41 L.Ed. 666 (1896). *See also Gaster v. Coldiron*, 297 A.2d 384 (Del. Super. 1972); *Annot.*, 73 A.L.R.3d 515 (1976).

The reason acts of this type are repugnant to our constitution is found in the following quote from *Davidson v. Jennings, supra*:

"It will be seen that this section imposes a penalty upon the defendant for exercising, in this class of cases, the common right of making a defense, which is accorded to every other litigant in the courts, by subjecting him to the payment of the plaintiff's attorney's fees if he is successful, without giving him (the defendant) a reciprocal right if he is victorious. . . ."

It is no answer, as argued by the plaintiff, that the statute can be construed to be neutral in that either party could institute suit and assume the role of plaintiff. Nor is it an answer to suggest that the defendant may avoid the imposition of this additional cost by evacuating the contested premises, because often the purpose of his defense is to establish the legitimacy of his occupancy.

We hold that this act, by imposing a pecuniary penalty on one party for the benefit of his opponent without granting him a corresponding right, violates the defendants' Fourteenth Amendment right to the equal protection of law and is contrary to Section 6 of the Colorado Constitution's Bill of Rights.

■ In view of the fact that a determination was made that the title of the Mores extended to the thread of the creek before the matter was finally determined by the jury, it becomes necessary for us to direct that in remanding for a new trial all claims made by the Mores be reinstated. Dismissal occurred after the Mores had reason to believe that they had obtained the relief that they requested, and they were not granted an opportunity to pursue their claim for adverse possession or for any other relief that was set forth in their original complaints.

Accordingly, the judgment of the trial court is reversed, and the claim against the defendants for conspiracy to commit trespass is remanded with directions to dismiss. The claim for trespass, and the claims asserted in the complaints against Johnson for trespass and other relief are remanded to the trial court, to be reinstated, and for a new trial on the merits in a manner not inconsistent with the directions contained in this opinion.