**FILED**
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

**June 30, 2021**

**Blaine F. Bates**
**Clerk**

NOT FOR PUBLICATION[1]

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

_____

In re JEFFREY THOMAS MULLINS and
CHARITY DAWN MULLINS,

Debtors.

_____

TRANS-WEST, INC., dba Transwest
Truck Trailer RV,

Plaintiff - Appellee,

v.

JEFFREY THOMAS MULLINS and
CHARITY DAWN MULLINS,

Defendants - Appellants.

BAP No. CO-20-046


Bankr. No. 16-13773
Adv. No. 16-01282
Chapter 7


OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of Colorado

_____

Before **CORNISH**, **MICHAEL**, and **HALL**, Bankruptcy Judges.

_____

**MICHAEL**, Bankruptcy Judge.

_____

[1]This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion.  10th Cir. BAP L.R. 8026-6.

The Debtors, Jeffrey Thomas Mullins ("Mr. Mullins") and Charity Dawn Mullins ("Mrs. Mullins") (collectively, the "Mullins" or "Debtors"), appeal the Bankruptcy Court judgment in favor of the appellee, Trans-West, Inc., dba Transwest Truck Trailer RV ("Trans-West"), on Trans-West's complaint that its debt be excepted from discharge under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6). After a trial on the merits, the Bankruptcy Court determined that Mr. Mullins, while an employee of Trans-West, engaged in an extensive fraudulent kickback scheme netting himself over $1,000,000 to the detriment of Trans-West. The Bankruptcy Court found Mr. Mullins's actions created a debt to Trans-West that was excepted from discharge under § 523(a)(2)(A) for actual fraud and false representation, and § 523(a)(6) for willful and malicious injury. Under a theory of civil conspiracy, the Bankruptcy Court also found Mrs. Mullins was jointly and severally liable for the entire debt with her husband, and that the debt was excepted from discharge under the same statutory provisions. Lastly, the Bankruptcy Court found that the Mullins' debt was subject to treble damages under Colorado law, and that the entire amount was excepted from discharge for both Debtors. The Debtors appeal the findings of the Bankruptcy Court only as they apply to Mrs. Mullins. Because the Bankruptcy Court did not commit clear error in finding facts in support of its decision, we AFFIRM the judgment.

**Factual and Procedural History**

Because the appellants do not challenge the Bankruptcy Court's judgment with respect to Mr. Mullins, we limit our statement of facts to those necessary to review the judgment against Mrs. Mullins. Prior to October 2011, the Mullins lived in Texas, where

Mr. Mullins owned and operated an RV sales business under the name Pinnacle Coach, LLC ("Pinnacle"). Although Mrs. Mullins was not actively involved in the purchase and sale of RVs through Pinnacle, the Bankruptcy Court found that she was an employee of Pinnacle with check-signing authority on the company's bank account, and involved in the winding down of Pinnacle in late 2011. In September 2011, Mr. Mullins relocated the family to Colorado, where he took a job as sales manager with Trans-West. From the end of 2011 until its discovery in mid-2015, Mr. Mullins orchestrated and conducted an elaborate fraudulent kickback scheme, wherein he used his position as sales manager to cause Trans-West to "buy high" from and "sell low" RV inventory to a network of business partners, who subsequently remitted checks or cash directly to Mr. Mullins that represented a portion of the profit from each transaction (the "Kickback Scheme"). Proceeds from the Kickback Scheme were deposited into a joint personal checking account held by the Mullins, a bank account of Pinnacle, and a bank account of Mullbuch, LLC ("Mullbuch"), a life-coaching company operated by Mrs. Mullins.

Upon discovery of the fraud, Trans-West brought claims against both of the Mullins in a state court civil action and referred the matter to the Weld County District Attorney for possible criminal charges. Criminal charges were later filed against Mr. Mullins in Weld County, Colorado. The civil matter was stayed when the Mullins filed a petition under chapter 7 of the Bankruptcy Code on April 20, 2016. Trans-West then initiated the present adversary proceeding, which was itself stayed until the conclusion of the criminal proceedings against Mr. Mullins. The litigation resumed before the

Bankruptcy Court with the filing of a second amended complaint (the "Complaint"),[2] which sought to establish a nondischargeable debt by Mr. Mullins to Trans-West under 11 U.S.C. § 523(a)(2)(A)[3] for actual fraud and false representation, § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity, and § 523(a)(6) for willful and malicious injury.  In addition, Trans-West asked the Bankruptcy Court to find Mr. Mullins liable to Trans-West for violating Colorado Revised Statutes § 18-4-405  ("§ 18-4-405"), Colorado's civil theft statute.[4]  Trans-West also asked the Bankruptcy Court to find each of the Mullins liable to Trans-West for conspiracy to commit false representation and actual fraud under § 523(a)(2)(A), and conspiracy to commit willful and malicious injury under § 523(a)(6).  It sought a nondischargeable judgment against Mrs. Mullins alone for aiding and abetting fraud or defalcation while acting in a fiduciary capacity under § 523(a)(4).  Lastly, Trans-West requested the Bankruptcy Court award it any damages proven at trial, including an award of treble damages, attorney's fees, and costs pursuant to § 18-4-405, for damages resulting from theft.

After a four-day trial on the merits, which included live testimony from eight witnesses, three of whom were experts, and the deposition testimony of five additional witnesses, the Bankruptcy Court concluded that Mr. Mullins had orchestrated the fraudulent Kickback Scheme, which resulted in actual damages to Trans-West in excess

---

[2] Second Amended Complaint for Nondischargeability of Debt under Section 523(a), *in* Appellant's App. at 9.
[3] Unless otherwise noted, all future references to "Code" "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code.
[4] Colo. Rev. Stat. § 18-4-405 (2020).

of $1,000,000. Although Mr. Mullins tried to explain away the various deposits into his personal and business accounts, the Bankruptcy Court did not believe his explanations, and found the debt nondischargeable under § 523(a)(2)(A) for actual fraud and false representation[5] and § 523(a)(6) for willful and malicious injury.[6] The Bankruptcy Court then found Mrs. Mullins liable for civil conspiracy under Colorado law based on her "extensive[] and overt[]"[7] participation in the Kickback Scheme. The Bankruptcy Court concluded that Mrs. Mullins conspired with her husband to commit actual fraud, false representation, and willful and malicious injury.[8] Upon finding that Trans-West suffered at least $1,000,000 in actual damages, the Bankruptcy Court applied § 18-4-405 to assess treble damages for civil theft in the amount of $3 million in addition to attorney's fees and costs, and entered a nondischargeable judgment in that amount against both of the

---

[5] Although the Bankruptcy Court titled the section discussing this claim "False Pretenses," the court set forth the elements of the tort of false representation and proceeded to apply the facts to those elements. This Court has recognized false pretenses and false representation as separate and distinct torts, *Bank of Cordell v. Sturgeon (In re Sturgeon)*, 496 B.R. 215, 223 (10th Cir. BAP 2013) ("Unlike false representations, which are express misrepresentations, false pretenses include conduct and material omissions."), but the Bankruptcy Court appears to use the terms interchangeably. The conduct of Mr. Mullins would easily support a finding of nondischargeability under § 523(a)(2)(A) based on either tort. The Bankruptcy Court ultimately entered judgment against Mr. Mullins based on the tort of false representation, which is the tort we will use as the basis for the claim of civil conspiracy against Mrs. Mullins.

[6] The Bankruptcy Court dismissed all counts related to breach of fiduciary duty under § 523(a)(4) for both Debtors, finding no express trust in favor of Trans-West based on Mr. Mullins's status as an employee. The Bankruptcy Court declined to amend the claim to include embezzlement, which was not pled in the Complaint, nor contained in any pre-trial statements.

[7] Findings of Fact, Conclusions of Law, and Order at 37, *in* Appellant's App. at 619.

[8] *Id.* at 37-38, *in* Appellant's App. at 619-20.

Mullins, jointly and severally. The Debtors do not challenge the findings of the Bankruptcy Court with respect to Mr. Mullins, but they assign five separate points of error to the Bankruptcy Court's conclusion that Mrs. Mullins was properly found liable for the debt to Trans-West.

## Jurisdiction and Standard of Review

This Court has jurisdiction over this appeal. The Bankruptcy Court's judgment, which fully resolved the adversary proceeding, was entered on September 20, 2020. The Debtors filed a timely notice of appeal on October 12, 2020, and neither side elected to have this appeal heard by the United States District Court for Colorado.

The "issue of whether the [trial] court relied on the correct legal standard . . . is a matter of law which we review *de novo*."[9] A bankruptcy court's factual findings, including whether a co-conspirator is liable under the theory of conspiracy, are reviewed on appeal for clear error; legal conclusions are reviewed *de novo*.[10] To the extent review involves the sufficiency of the evidence, we review for clear error.[11] "A finding of fact is 'clearly erroneous' if it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made."[12] "If the [trial] court's account of the evidence is plausible in light of

---

[9] *Hadden v. Bowen,* 851 F.2d 1266, 1268 (10th Cir. 1988).

[10] *In re Paige,* 685 F.3d 1160, 1178 (10th Cir. 2012); *Blankenship v. Herzfeld*, 721 F.2d 306, 308 (10th Cir. 1983) (reviewing findings related to conspiracy for clear error).

[11] *Diamond v. Vickery (In re Vickery)*, 488 B.R. 680, 685 (10th Cir. BAP 2013) (citing *DSC Nat'l Props., LLC v. Johnson (In re Johnson)*, 477 B.R. 156, 168 (10th Cir. BAP 2012)).

[12] *Cowles v. Dow Keith Oil & Gas, Inc.,* 752 F.2d 508, 511 (10th Cir. 1985) (citation omitted).

the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."[13]  "This admonition applies equally regardless of whether the [trial] court's factual findings are based on credibility determinations[,] documentary evidence," or inferences from other facts.[14]  Whether a court erred in ordering the amendment of pleadings pursuant to Federal Rule of Civil Procedure 15(b) is reviewed for abuse of discretion.[15]

## Discussion

The Debtors make several assignments of error, which we will discuss in turn.

*1. The Bankruptcy Court did not improperly* sua sponte *amend the Complaint pursuant to Federal Rule of Civil Procedure 15(b)(1).*

The Debtors allege that Trans-West did not properly plead a claim for civil conspiracy under Colorado law, and that the Bankruptcy Court erred by *sua sponte* amending the Complaint pursuant to Federal Rule of Civil Procedure 15(b)(1) to include the claim.  We find that, despite the Debtors' strained and narrow reading, the Complaint was sufficient to put them on notice that Trans-West was asserting a claim of civil conspiracy against Mrs. Mullins.  Therefore, the Bankruptcy Court had no reason to resort to amendment of the Complaint.

---

[13] *La Resolana Architects, PA v. Reno, Inc.,* 555 F.3d 1171, 1177 (10th Cir. 2009) (quoting *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573–74 (1985)).
[14] *Id.*
[15] *Green Country Food Mkt., Inc. v. Bottling Grp., LLC*, 371 F.3d 1275, 1280 (10th Cir. 2004).  *See also Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 778 (10th Cir. 2021) ("We hold the appropriate standard of review is abuse of discretion because we apply that standard in the analogous Rule 15 context.").

Despite the Debtors' insistence that a claim for conspiracy could not be maintained under § 523, multiple courts, including this Court, have found otherwise.[16] When a plaintiff holds a claim against a debtor, but has not yet acquired a judgment, the process of finding the claim excepted from discharge by the bankruptcy court is a two-step dance.[17] The first step requires the trial court to determine whether the plaintiff holds a valid claim against the defendant, which is controlled by state law.[18] The relevant state law claim is whether Mrs. Mullins is liable to Trans-West on a theory of conspiracy. The Complaint clearly alleges the Mullins engaged in a conspiracy to unlawfully defraud or willfully and maliciously injure Trans-West, including allegations of each element necessary to state claims of civil conspiracy under Colorado law. It is only the second

---

[16] *Bank of Cordell v. Sturgeon (In re Sturgeon)*, 496 B.R. 215, 223 (10th Cir. BAP 2013) ("False representations and implied misrepresentations that are intended to create and foster a false impression by co-conspirators in furtherance of a fraudulent scheme may be attributed to a debtor who is an active, willing and knowing participant in the fraudulent scheme for purposes of Section 523(a)(2)(A)."); *Ewers v. Cottingham (In re Cottingham)*, 473 B.R. 703, 710 (6th Cir. BAP 2012) (§ 523(a)(6)); *Haemonetics Corp. v. Dupre*, 238 B.R. 224, 230 (D. Mass. 1999), *aff'd sub nom. In re Dupre*, 229 F.3d 1133 (1st Cir. 2000) (§ 523(a)(6)); *O'Gara v. Hunter (In re Hunter)*, 610 B.R. 479, 511 (Bankr. M.D.N.C. 2019) ("To determine whether a debtor's liability for civil conspiracy is a willful and malicious injury subject to nondischargeability under § 523(a)(6), the court looks to a debtor's intent, as a coconspirator, in committing the underlying unlawful act or tort of the conspiracy."); *Synod of S. Atl. Presbyterian Church v. Magpusao (In re Magpusao)*, 265 B.R. 492, 498 (Bankr. M.D. Fla. 2001) (§ 523(a)(6)).

[17] *Grogan v. Garner*, 498 U.S. 279, 283 (1991) ("At the outset, we distinguish between the standard of proof that a creditor must satisfy in order to establish a valid claim against a bankrupt estate and the standard that a creditor who has established a valid claim must still satisfy in order to avoid dischargeability.").

[18] *Id.* at 283-84 ("The validity of a creditor's claim is determined by rules of state law."); *Diamond v. Vickery (In re Vickery)*, 488 B.R. 680, 692 n.63 (10th Cir. BAP 2013); *Lang v. Lang (In re Lang)*, 293 B.R. 501, 513 (10th Cir. BAP 2003) ("The state law of fraud controls with respect to whether fraud has occurred, while bankruptcy law controls with respect to the determination of nondischargeability.").

step in the dance, in making a determination whether the claim is excepted from discharge pursuant to § 523(a), where the bankruptcy court applies federal law governed by the Bankruptcy Code.[19]  We find Trans-West properly pled claims of conspiracy against Mrs. Mullins, and that the Bankruptcy Court properly applied Colorado law of civil conspiracy in making its determination regarding the validity of Trans-West's claims.  Finding no reason for the Bankruptcy Court to conform pleadings to the evidence, we find no error.

*2.  The Bankruptcy Court made sufficient factual findings to support a determination of Mrs. Mullins's liability to Trans-West under § 523(a)(2)(A) and (a)(6) as a co-conspirator.*

    *a.  Civil conspiracy under Colorado law*

In the first step of our dance, we find the Bankruptcy Court properly applied Colorado law to determine whether Mrs. Mullins was liable to Trans-West under a theory of conspiracy.  In order to establish a claim for civil conspiracy under Colorado law, there must be:  (1) two or more persons, (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.[20]  Courts "will not infer the agreement necessary to form a conspiracy; evidence of such an agreement must be presented by the plaintiff."[21]  And "silent knowledge of an unlawful act is insufficient to establish the

---

[19] *Grogan v. Garner*, 498 U.S. at 284.
[20] *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995); *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989); *More v. Johnson*, 568 P.2d 437, 440 (Colo. 1977); *Lockwood Grader Corp. v. Bockhaus*, 270 P.2d 193, 196 (Colo. 1954).
[21] *Nelson v. Elway*, 908 P.2d at 106.  *See also More v. Johnson,* 568 P.2d at 440.

requisite agreement."[22]  The Bankruptcy Court concluded that Mrs. Mullins conspired with Mr. Mullins to defraud Trans-West by "extensively and overtly" participating in the Kickback Scheme, and thus met the requirements for liability under a theory of civil conspiracy.[23]

The Bankruptcy Court found Mrs. Mullins was an employee of Pinnacle with check signing authority during the time kickbacks flowed through Pinnacle, and she was involved with its corporate winding down.  The Bankruptcy Court also found that Mrs. Mullins personally received a check from Pinnacle on the same day that one of Mr. Mullins's other co-conspirators wrote a check to Pinnacle, despite Mrs. Mullins's insistence that she was not involved in any of Mr. Mullins's business dealings.  Mrs. Mullins deposited approximately $28,000 in unexplained cash into the Debtors' joint personal checking account between 2011 and 2014.  Mrs. Mullins denied making the deposits, but was otherwise unable to explain their source or purpose.  Mullbuch, Mrs. Mullins's life-coaching company, received a check from another of Mr. Mullins's co-conspirators and subsequently issued a check to Mrs. Mullins for the same amount.  More than $400,000 over and above Mr. Mullins's salary flowed through the Debtors' joint personal checking account in 2012, when neither of the Mullins had a recognized secondary source of income.  As additional evidence of her participation in the Kickback Scheme, the Bankruptcy Court noted Mrs. Mullins's signature on the couple's tax returns

---

[22] *More v. Johnson*, 568 P.2d at 440.
[23] Findings of Fact, Conclusions of Law, and Order at 37, *in* Appellant's App. at 619.

and recounted several occurrences of "lavish consumer spending sprees," cash withdrawals, and numerous expenditures related to the Mullins' purchase of a new home.[24]  Despite her denials of wrongdoing and alternative explanations for the flow of funds through their accounts, the Bankruptcy Court found Mrs. Mullins was "evasive, combative, and never made eye contact with the Court."[25]

We find the Bankruptcy Court's conclusion of Mrs. Mullins's liability for civil conspiracy is supported by the evidence.  The court found that Mrs. Mullins conspired with her husband to defraud and injure Trans-West.  Although the evidence of Mrs. Mullins's participation in the Kickback Scheme pales in comparison to her husband's, the Bankruptcy Court found that she was a knowing and active participant in the fraud, through the receipt of checks, deposits of cash, consumer purchases made, length of time, and amount of money transferred.  Each of the elements of civil conspiracy is satisfied by a preponderance of the evidence, and this Court cannot find clear error in the Bankruptcy Court's conclusion.

### b. Exceptions from discharge under § 523(a)(2)(A) and (a)(6)

The second step of our dance involves asking whether the debt to Trans-West, having been established in the first step, should be excepted from discharge under any of the provisions of § 523(a).  Because the Bankruptcy Court found the debt to Trans-West excepted from discharge under both § 523(a)(2)(A) and (a)(6), we must discuss each provision separately.

---

[24] *Id.* at 25, *in* Appellant's App. at 607.
[25] *Id.*

-11-

*i. Section 523(a)(2)(A)*

This Court has previously addressed the standards required to find a co-conspirator liable for a debt resulting from a fraudulent scheme.[26]  In *In re Sturgeon*, we found that where a debtor was an active and knowing participant in a fraudulent scheme, liability for the entire scheme would be excepted from discharge, not just the debt tied directly to the debtor's actions.[27]  In that case, we stated:

> Actual fraud occurs "when a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right." [*Diamond v. Vickery (In re Vickery),* 488 B.R. 680, 691 (10th Cir. BAP 2013)] at 690 (quoting *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich),* 259 B.R. 873, 877 (6th Cir. BAP 2001)).
>
> False representations and implied misrepresentations that are intended to create and foster a false impression by co-conspirators in furtherance of a fraudulent scheme may be attributed to a debtor who is an active, willing and knowing participant in the fraudulent scheme for purposes of Section 523(a)(2)(A). *See, e.g., Blackmon v. Evans (In re Evans),* 410 B.R. 317, 321 (Bankr. M.D. Fla. 2009) (fraudulent acts and representations made by co-conspirators are attributed to an active participant in the fraudulent scheme).  Fraudulent intent for purposes of Section 523(a)(2)(A) can be shown by establishing that the debtor was a willing participant in a fraudulent scheme and thereby intended to deceive a creditor. *Holmes v. Nat'l City Bank (In re Holmes),* 414 B.R. 115, 131–32 (E.D. Mich. 2009).[28]

---

[26] *Bank of Cordell v. Sturgeon (In re Sturgeon)*, 496 B.R. 215 (10th Cir. BAP 2013).

[27] *Id.*

[28] *Id.* at 223–24 (footnotes omitted).  *See also Aetna Cas. and Sur. Co. v. Markarian (In re Markarian),* 228 B.R. 34, 39 (1st Cir. BAP 1998) ("[S]ection 523(a)(2)(A) may include debts which arise from the wrongful acts of conspirators and their co-conspirators."); *MacDonald v. Buck (In re Buck),* 75 B.R. 417, 420–21 (Bankr. N.D. Cal. 1987) ("[A] debtor who has made no false representation may nevertheless be bound by the fraud of another if a debtor is a knowing and active participant in the scheme to defraud.").

In finding the debt to Trans-West nondischargeable, the Bankruptcy Court found as a fact that the Mullins orchestrated a fraudulent scheme, and that Mrs. Mullins was an active participant. The same facts that supported the Bankruptcy Court's conclusion that Mrs. Mullins was liable for civil conspiracy under Colorado law also support the Bankruptcy Court's determination that the debt should be excepted from discharge pursuant to § 523(a)(2)(A): her active receipt and deposit of checks and cash were evidence of her willing participation, and the sheer amount of funds passing through the couple's accounts for years was evidence that she "had to know" Mr. Mullins was coordinating a fraudulent scheme.[29]

We acknowledge the weakest element of the Bankruptcy Court's decision is its finding that Mrs. Mullins was aware that her husband was orchestrating a fraudulent scheme against Trans-West. While we believe the Bankruptcy Court could have made that finding more explicitly, we are aware that this Circuit endorses the principle that intent to deceive a creditor may be inferred from the totality of the circumstances of a case.[30] The Bankruptcy Court found sufficient facts from which to infer that Mrs. Mullins was fully aware of her husband's fraudulent conduct. We therefore cannot find that the Bankruptcy Court's conclusion that Mrs. Mullins was a knowing participant in the Kickback Scheme was clearly erroneous. Having found Mr. Mullins liable for actual

---

[29] *See* Findings of Fact, Conclusions of Law, and Order at 38, *in* Appellant's App. at 620 ("In view of the amount of money involved and the time frame, she had to know that the funds were not just from gambling.").

[30] *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1375 (10th Cir. 1996); *In re Sturgeon*, 496 B.R. at 222; *Copper v. Lemke (In re Lemke),* 423 B.R. 917, 922 (10th Cir. BAP 2010).

fraud and false representation, the Bankruptcy Court concluded that Mrs. Mullins was liable under § 523(a)(2)(A) as a co-conspirator based on her knowledge of and participation in the scheme. Because the record provides support for the Bankruptcy Court's conclusion, we cannot find error.[31]

    *ii. Section 523(a)(6)*

When evaluating a willful and malicious injury under § 523(a)(6), courts "require[] proof of: (1) an intentional action by the defendant; (2) done with the intent to harm; (3) which causes damage (economic or physical) to the plaintiff; and (4) the injury is the proximate result of the action by the defendant."[32] When evaluating the liability of a co-conspirator under § 523(a)(6), courts invariably focus on the same two critical elements as they do under § 523(a)(2)(A): knowledge of the tort and participation.[33] Both sections share a requirement that the defendant's intent to harm be evidenced by their knowledge of the unlawful conduct at the heart of the conspiracy. Unlike

---

[31] Although individual members of this panel may have reached a different outcome as triers of fact, the Bankruptcy Court's account of the evidence is "plausible in light of the record viewed in its entirety, [and] the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

[32] *Bryant v. Tilley (In re Tilley)*, 286 B.R. 782, 790 (Bankr. D. Colo. 2002) (citing *Synod of S. Atl. Presbyterian Church v. Magpusao (In re Magpusao)*, 265 B.R. 492, 498 (Bankr. M.D. Fla. 2001)).

[33] *Ewers v. Cottingham (In re Cottingham)*, 473 B.R. 703, 710 (6th Cir. BAP 2012); *Haemonetics Corp. v. Dupre*, 238 B.R. 224, 229-30 (D. Mass. 1999), *aff'd sub nom. In re Dupre*, 229 F.3d 1133 (1st Cir. 2000); *O'Gara v. Hunter (In re Hunter)*, 610 B.R. 479, 511 (Bankr. M.D.N.C. 2019); *In re Tilley*, 286 B.R. at 790; *In re Magpusao*, 265 B.R. at 498 ("[K]nowledge must be concurrent with participation in the use or enjoyment of the stolen property in order for liability to attach.").

§ 523(a)(2)(A), which requires active participation in the fraudulent scheme by the defendant, courts have found debts nondischargeable under § 523(a)(6) where the debtor's "participation" was the active spending of, and benefit from, funds the debtor knew were unlawfully acquired. This conduct amounts to a conversion of the stolen funds that is separate and distinct from the tort that brought the funds into the defendant's hands.[34]

In *Haemonetics Corp. v. Dupre*,[35] the United States District Court for the District of Massachusetts faced facts similar to ours. There, the court found that the debtor-wife could not claim ignorance of her husband's embezzlement, which brought substantial excess funds into their joint accounts. While the court found no evidence that she participated in the embezzlement of funds from her husband's employer, the court found the debtor-wife knowingly participated in a subsequent conversion of the funds by utilizing the embezzled funds to support an extravagant lifestyle. The reflections of the court are noteworthy:

> It is not sufficient, of course, to merely show knowledge on Theresa's part. The evidence must also establish that Theresa was a participant in the scheme to convert the appellants' funds. Judge Hillman seemed to be [of] the view that appellants were required in this regard to show that Theresa assisted Paul in the actual embezzlement to establish liability on her part. This, I believe, reflects a misunderstanding of the theory on which the appellants' case is based. *The scheme alleged involved not one, but two conversions of the pilfered funds.* The first conversion was the embezzlement itself for which appellants concede Paul bears the sole responsibility. *The second conversion,* and the one appellants seek to pin on Theresa, *was the use of the money by the couple to support their*

---

[34] *See, e.g., Haemonetics Corp. v. Dupre*, 238 B.R. at 229.
[35] *Id.*

*extravagant lifestyle.* While embezzlement was the driving logic of the alleged scheme, it was not its defining or sole object.

Seen in this light the issue becomes one of Theresa's liability under section 523(a)(6) (and not section a(2)(A) [sic] which would apply more appropriately to Paul). To fall within the exception of § 523(a)(6), a debtor must be shown to have "willfully and maliciously" injured the property of another. That a conversion is an "injury" to property is not disputed. But the meaning of the phrase "wilful and malicious," which obviously speaks to the debtor's state of mind, was a fair subject of debate prior to *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S. Ct. 974, 140 L.Ed.2d 90 (1998). The Supreme Court held in *Geiger,* that as used in section (a)(6), the phrase means more than an intentional act leading to an injury. As the Court observed, because "'wilful' in (a)(6) modifies the word 'injury,' ... a deliberate or intentional *injury,* [and] not merely a deliberate or intentional *act* that leads to injury" is required. *Id.* at 61, 118 S. Ct. 974. In making this distinction, Justice Ginsburg noted that "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'" *Id.* at 61–62, 118 S. Ct. 974, citing Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964).

. . . .

Under *Geiger,* the debtor must thus be shown not only to have intended to exercise control over the plaintiffs' property, but to have done so intending the consequent injury to the plaintiffs' interest in the property. Here the record demonstrates that Theresa knew that the excess funds in the joint accounts were stolen. She nonetheless wrote checks on these funds. Her intent was to convert the embezzled money to her own (and to Paul's) use, thereby permanently depriving the true owners (Haemonetics and Nova) of their money. Her conduct clearly satisfies *Geiger,* and hence the appellants' claims against her are not dischargeable.[36]

In *In re Tilley*,[37] the Bankruptcy Court for the District of Colorado faced a similar

fact pattern, with a twist. There, the court found that mere receipt and expenditure of

embezzled funds was insufficient to meet the requirements of § 523(a)(6), where there

---

[36] *Id.* at 229–30 (emphasis added) (footnotes omitted).
[37] *In re Tilley*, 286 B.R. at 782.

was no evidence the debtor participated in the embezzlement or *knew of the source of the funds*. That court opined:

> If a debtor knows that his spouse or significant other is embezzling funds and then participates in the use or dissipation of them for a purpose other than the intent of the original entrustment to the significant other, then the debtor may be liable for conversion, which is a claim that would satisfy the requirements of a willful and malicious injury to property claim under Section 523(a)(6). To satisfy a *prima facie* case, however, a plaintiff must establish the defendant's knowledge of the embezzlement, not simply his receipt of the embezzled funds, in order to demonstrate the conversion.[38]

Although the present case involves actual fraud and false representation instead of embezzlement, the principles are the same. Having concluded that Mrs. Mullins knew of the fraudulent activity of her husband and that she was, in fact, an active participant in the Kickback Scheme, the Bankruptcy Court found that her profligate spending of the fruits of the scheme resulted in a willful and malicious injury to Trans-West. We cannot find error in the Bankruptcy Court's conclusion.

*3. The Bankruptcy Court did not err in awarding treble damages and attorney's fees against Mrs. Mullins under § 18-4-405.*

Having found each of the Mullins liable for the damages to Trans-West for civil theft, the Bankruptcy Court awarded Trans-West treble damages pursuant to § 18-4-405. The Debtors assert that such an award was not properly pled against Mrs. Mullins.[39] We disagree.

---

[38] *Id.* at 790.
[39] The Debtors also argue that in the event we find error in the Bankruptcy Court's conclusions under § 523(a)(6) with respect to Mrs. Mullins, the award under § 18-4-405 should be reversed. Finding no error, we find no grounds to disturb the award.

First, the Complaint put the Mullins on sufficient notice of the request for an award of treble damages and attorney's fees against both defendants. The Mullins assert that the Complaint did not specifically plead § 18-4-405 in connection with Mrs. Mullins, and they were caught off-guard when the enhanced damage award was applied to her. This may stem from a misunderstanding of the nature of a claim for conspiracy. Colorado courts have noted that "the essence of a civil conspiracy claim is not the conspiracy itself, but the actual damages resulting from the acts done in furtherance of the conspiracy."[40] In *Morrison v. Goodspeed*,[41] a commonly cited case by Colorado's highest court on the subject of civil conspiracy, the court stated:

> In a civil action, conspiracy is not actionable per se. The proof of conspiracy in such actions is admitted in order that what otherwise might appear to be unrelated acts of several individuals shall appear as related parts of a single transaction, in which the acts of each are in fact the acts of the others in furtherance of a common design, the consummation of which results in damage. The gist of such an action is damages and no right of action accrues until damages are sustained. *The proof of a conspiracy in civil cases also determines who shall respond in damages.* Action of an individual which would cause him to be liable for damages, if acquiesced in by two or more others, and in which they co-operated *imposes on all who participated the obligation to respond in damages resulting from the consummation of the common design.* In Pullen v. Headberg, 53 Colo. 502, 127 P. 954, 955, we said: 'At common law a 'conspiracy' is defined as a combination between two or more persons to do a criminal or unlawful act or a lawful act by criminal or unlawful means. In criminal prosecutions, the gist of the action is the conspiracy. But in civil cases the gist of the action is not the conspiracy, but the damages resulting from it, and unless a civil action in damages would lie against one of the conspirators, if the act was done by him alone, it will not lie against many acting in concert. The object of the criminal action is punishment against the wrongdoers. *The object of*

---

[40] *Resol. Tr. Corp. v. Heiserman*, 898 P.2d 1049, 1055, 1057 (Colo. 1995); *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989); *Double Oak Const., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003).

[41] 68 P.2d 458 (Colo. 1937).

*the civil action is to recover any damages resulting from carrying out the conspiracy.*'[42]

Under the principles espoused in *Morrison*, it is clear that Colorado courts would endorse the extension of damages to all active participants, regardless of their relative involvement in the scheme.

We also find the structure of the Complaint should have put the Mullins on notice that Trans-West sought an application of § 18-4-405 for treble damages and attorney's fees against both defendants. The request appears in the final "wherefore" paragraph of the Complaint, applicable to all defendants, as opposed to being tied to a claim against a particular defendant.[43] Colorado courts make it clear that the purpose of a claim for civil conspiracy is to extend liability for damages to each of the co-conspirators.[44] The same logic applies to the extension of enhanced damages: to allow the plaintiff to recover all damages resulting from the conspiracy.[45] Lastly, the text of § 18-4-405 makes clear that "[t]he owner [of stolen property] may maintain an action not only against the taker thereof *but also against any person in whose possession he finds the property*."[46] As the

---

[42] *Id.* at 464 (emphasis added). *See Resol. Tr. Corp. v. Heiserman*, 898 P.2d at 1055; *More v. Johnson*, 568 P.2d 437, 494 (1977); *McGlasson v. Barger*, 431 P.2d 778, 780 (1967). *See also Double Oak Const., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d at 146.

[43] *See* Complaint at 7, *in* Appellant's App. at 9.

[44] *See supra* notes 40-42 and accompanying text.

[45] *See Morrison v. Goodspeed*, 68 P.2d at 465 ("If such agreement and concert of action resulted in damages to Morrison, it is such result that constitutes his cause of action, and it is good as against all who participated in producing it.").

[46] § 18-4-405 (emphasis added).

fruits of the Kickback Scheme were found in the Mullins' joint personal checking account, both defendants should have been on notice of the statute's application.

We also find the Bankruptcy Court correctly applied § 18-4-405 to award treble damages and fees against both Mr. and Mrs. Mullins. Section 18-4-405 provides a plaintiff "*may* recover two hundred dollars or three times the amount of actual damages . . . and *may also* recover costs of the action and reasonable attorney fees."[47] Despite usage of the word "may," courts have held that an award of treble damages and attorney's fees to a prevailing plaintiff is mandatory upon proof of all of the elements of civil theft.[48] Thus, the Bankruptcy Court had no discretion whether to award treble damages and fees upon its finding that the Debtors were liable for civil theft. The Bankruptcy Court found both Mr. and Mrs. Mullins were liable for civil theft for the whole of the damages to Trans-West as co-conspirators. Upon such a finding, Colorado law *required* the Bankruptcy Court to issue an award of treble damages and attorney's fees. Finding

---

[47] § 18-4-405 (emphasis added).

[48] *Arnold v. Arnold (In re Arnold)*, No. AP 10-01311, 2016 WL 1022350, at *4 (10th Cir. BAP Mar. 15, 2016) (unpublished); *JK Transports, Inc., v. McGill (In re McGill)*, 623 B.R. 876, 901 (Bankr. D. Colo. 2020); *In re Krupka*, 317 B.R. 432, 439 (Bankr. D. Colo. 2004) ("Because the language used [in § 18-4-405] speaks in terms of what the owner may recover as opposed to what the court may award, this Court does not believe that the statutory language supports the argument that discretion lies with the trial court to either award treble damages or not as it may deem appropriate."); *Franklin Drilling & Blasting Inc. v. Lawrence Constr. Co.*, 463 P.3d 883, 889 n.5 (Colo. App. 2018) ("[N]othing in the civil theft statute confers such discretion on a trial court, if all the elements of civil theft have been proved by a preponderance of the evidence.") (disagreeing with *Bemas Constr., Inc. v. Dorland (In re Dorland)*, 374 B.R. 765 (Bankr. D. Colo. 2007), which suggested that an award of treble damages under § 18-4-405 was subject to court discretion); *Steward Software Co. v. Kopcho*, 275 P.3d 702, 712 (Colo. App. 2010) (applying logic of *In re Krupka* to award of attorney's fees under § 18-4-405), *rev'd on other grounds*, 266 P.3d 1085 (Colo. 2011).

the Bankruptcy Court applied the correct legal standard for applying enhanced damages, we find no reason to disturb the award.

*4. The Bankruptcy Court did not err in awarding Mrs. Mullins's share of the funds held in escrow from the sale of the Defendants' home to Trans-West pursuant to a stipulation entered in Weld County Case No. 2015cv30505.*

Given that we affirm the Bankruptcy Court's determinations that each of the Mullins owe a nondischargeable debt to Trans-West, we find no cause to disturb the decision to disburse the escrowed funds to Trans-West.

## Conclusion

After thoroughly reviewing the record and considering the evidence as a whole, we are not persuaded by the Debtors' arguments on appeal. The Complaint was sufficiently pled to put the Debtors on notice that Trans-West sought to hold Mrs. Mullins jointly liable with Mr. Mullins for the entire debt on the basis of civil conspiracy. The Bankruptcy Court's finding that Mrs. Mullins was a willful participant in Mr. Mullins's fraudulent scheme to injure Trans-West is supported by the evidence presented at trial and is not clearly erroneous. We therefore affirm the Bankruptcy Court's determination that the debt to Trans-West is nondischargeable under § 523(a)(2)(A) for actual fraud and false representation and under § 523(a)(6) for willful and malicious injury. We also find no error in the Bankruptcy Court's award of treble damages, attorney's fees, costs, and expenses against Mr. and Mrs. Mullins jointly and severally, nor in its disbursement of funds held in escrow to Trans-West pursuant to a stipulation entered by the parties.